Miller v. Miller.

MILLER v. MILLER.

1. **Husband and Wife:** CONTRACT TO REGULATE DOMESTIC CONDUCT: CONSIDERATION: PUBLIC POLICY. Action by a wife against her husband to recover money alleged to be due her on a written contract, whereby the parties mutually agreed to ignore and never again allude to former matters of dispute between them, and in the future to refrain from scolding, fault-finding and anger, and to behave respectfully, and treat each other fairly, and to live together as husband and wife, and faithfully observe the marriage relation and live virtuously;·and in which the wife agreed to keep her home and family in a comfortable and reasonably good condition; and the husband agreed to provide for the necessary expenses of the family, and, in addition thereto, to pay the wife, for her individual use, two hundred dollars per year, in monthly payments, so long as she should faithfully observe the terms and conditions of the agreement. *Held* —

    (1) That the contract was void as being without consideration; because the things to be done by the wife for the payment of the money were only what she was by law bound to do. [ADAMS, C. J., and SEEVERS, J., *dissenting*.]

    (2) (On rehearing by a full bench after ADAMS and SEEVERS, JJ., had retired.) That the contract was void as being against public policy; because its enforcement would involve an inquiry into those private matters of the family which the law, in the interest of society, holds sacred.

2. **Pleading:** EXHIBIT CONTROLS AVERMENTS: DEMURRER. In an action on a contract, a copy of which is attached to the petition as an exhibit, the contract controls the averments of the petition, so that, if the contract on its face is void, the petition is bad on demurrer, notwithstanding its averments; for such averments not in harmony with the right of recovery on the contract are not well pleaded, and are not admitted by the demurrer.

*Appeal from Polk District Court.*—HON. MARCUS KAVANAGH, JR., Judge.

FILED, DECEMBER 13, 1887.

THIS action was brought by Nancy A. Miller upon a written contract executed to her by the defendant, her husband, Robert S. Miller. The defendant demurred to the petition, and the demurrer was sustained. The plaintiff elected to stand upon her petition, and judgment was rendered against her for costs. She appeals.

*Cole, McVey & Clark*, for appellant.

*C. P. Holmes*, for appellee.

ADAMS, C. J.—The contract sued upon is in these words: "This agreement, made this fifth day of August, 1885, between the undersigned, husband and wife, in the interests of peace and for the best interests of each other and of their family, is signed in good faith by each party, with the promise, each to the other, and to their children, that they will each honestly promise to help each other to observe and keep the same, which is as follows, to-wit: All past causes and subjects of dispute, disagreement and complaint of whatever character or kind shall be absolutely ignored and buried, and no allusion thereto by word or talk to each other or any one else shall ever be made. Each party agrees to refrain from scolding, fault-finding and anger in so far as relates to the future, and to use every means within their power to promote peace and harmony, and that each shall behave respectfully, and fairly treat each other; that Mrs. Miller shall keep her home and family

in a comfortable and reasonably good condition, and Mr. Miller shall provide for the necessary expenses of the family, and shall, in addition thereto, pay Mrs. Miller for her individual use two hundred dollars per year, payable, sixteen and two-thirds dollars per month, in advance, so long as Mrs. Miller shall faithfully observe the terms and conditions of their contract. They agree to live together as husband and wife and observe faithfully the marriage relation, and each to live virtuously with the other.''

The petition demurred to is quite long. We cannot set it out. The defendant demurred upon the ground that it showed the contract to be without consideration and against public policy. His position is that the plaintiff merely agreed to do what by law she was bound to do. The majority think that the defendant's position must be sustained. The writer of this opinion is not able to concur in that view. The petition sets out several reasons and inducements for making the contract. Among other things, it avers, in substance, that the defendant, while improperly spending money upon other women, refused to furnish the plaintiff with necessary clothing, and she had been compelled to furnish it herself by her personal earnings. This the demurrer admits. It appears to the writer, then, that the plaintiff had the right to separate from the defendant, and go where she could best provide for her wants. This right she waived in consideration of the defendant's contract sued upon. The waiver of the right, it seems to the writer, constituted a consideration for the contract; but, as the majority think otherwise, the judgment must be

AFFIRMED.

SEEVERS, J., dissents from the majority, and concurs with the writer of the opinion.

### OPINION ON REHEARING.

#### [FILED, JUNE 6, 1889.]

GRANGER, J.—Since the former hearing of this case a majority of the members of this court have retired, and others are substituted, and of those retired are ADAMS

and SEEVERS, JJ., who did not concur in the former holding. The former opinion, prepared by Chief Justice. ADAMS, states in general terms the conclusion of the majority, and very briefly expresses some reasons for the dissent. One reason for granting the rehearing is that the views of the court may be expressed in support of its conclusions, whatever they may be.

The action is by a wife against her husband, to recover on a contract, which is in the following words: "This agreement, made this fifth day of August, 1885, between the undersigned, husband and wife, in the interest of peace, and for the best interests of each other and of their family, is signed in good faith by each party, with the promise, each to the other, and to their children, that they will each honestly promise to help each other to observe and keep the same, which is as follows, to-wit: All past subjects and causes of dispute, disagreement and complaint, of whatever character or kind, shall be absolutely ignored and buried, and no allusion thereto, by word or talk, to each other, or any one else, shall ever be made. Each party agrees to refrain from scolding, fault-finding and anger, in so far as relates to the future, and to use every means within their power to promote peace and harmony. That each shall behave respectfully, and fairly treat the other. That Mrs. Miller shall keep her home and family in a comfortable and reasonably good condition, and Mr. Miller shall provide for the necessary expenses of the family, and shall, in addition thereto, pay Mrs. Miller, for her individual use, two hundred dollars per year, payable, sixteen and two-thirds dollars per month, in advance, so long as Mrs. Miller shall faithfully observe the terms and conditions of this agreement. They agree to live together as husband and wife, and observe faithfully the marriage relations, and each to live virtuously with the other." The petition recites the contract, avers a breach of its conditions for payment of the monthly installments, and asks for judgment.

The petition is assailed by demurrer on two grounds: (1) That the contract for the payment of the money is

void as against public policy; and (2) that it is not supported by a consideration. The district court sustained the demurrer, and the plaintiff, relying upon, her petition, appeals from a judgment against her.

I. The theory upon which appellant seeks to escape the force of the claim that this contract is against public policy is that the agreement to pay the yearly or monthly amounts is but a post-nuptial settlement of such amount in favor of the wife, and therefore sanctioned by law. We must consider the averments of the petition in the light of the contract which is the basis of recovery, and statements of the petition not in harmony with a right of recovery on the contract are not well pleaded, and are not admitted by the demurrer.

We think it important to first settle the question, for what is the plaintiff entitled to recover, if at all? The contract is decisive of this question, and, for the purposes of the demurrer, will override any opposing statements of the petition. The contract recites that "Mr. Miller shall provide for the necessary expenses of the family, and shall, in addition thereto, pay Mrs. Miller, for her individual use, two hundred dollars per year, payable, sixteen and two-thirds dollars per month, in advance, so long as Mrs. Miller shall faithfully observe the terms and conditions of their contract." Whatever may have induced the making of the contract, one thing is certain,—the ground of recovery from time to time is a faithful observance of the contract. If payment of the amounts is enforced, this observance must be pleaded, and, if denied, it must become a matter of judicial inquiry. Now, looking to the contract, we find that the plaintiff has agreed to do just what is demanded by her marital relations and is essential to domestic felicity. If she does this, under the letter of her contract, she may recover; if she does not, she cannot recover. Conceding, for the purpose of this branch of the case, that the contract is supported by a consideration independent of her promise therein, and looking exclusively to the question, is its enforcement against public policy? we may properly ask, does it not contain

all the objectionable features of a contract, confessedly
with no other consideration than a promise to observe
marital duties, or, in other words, to do what, without
the contract, the law required her to do? Now, if a hus-
band and wife, without any domestic discord to serve as
an inducement to such a contract, should make an
agreement that the husband should pay to the wife,
monthly, a stated sum, merely because of her observ-
ance of an agreement not to scold, find fault, or get
angry, and to use every means in her power to promote
peace and harmony, and behave respectfully towards
her husband, would the court, upon a refusal by the
husband, compel a payment? We think not, nor do we
think counsel would seriously contend, in such a case,
that it should; for the reason that judicial inquiry into
matters of that character, between husband and wife,
would be fraught with irreparable mischief, and for-
bidden by sound considerations of public policy.

It is of the genius of our laws, as well as of our
civilization, that matters pertaining so directly and
exclusively to the home, and its value as such, and
which are so generally susceptible of regulation and
control by those influences which surround it, are not to
become matters of public concern or inquiry. This
thought has vindication throughout our system of juris-
prudence. The marital obligation of husband and wife
in the interest of homes, both happy and useful, have a
higher and stronger inducement than mere money con-
sideration, and they are generally of a character that
the judgments or processes of the courts cannot
materially aid, and are clearly so in the case we have
supposed. We are not referred to, nor do we find, a
case wherein a recovery has been justified on a contract
of this character. It is to be kept in mind that public
policy is not against the payment of money, if it is done
voluntarily; but the evil which the law anticipates
arises from the enforcement of such a contract, which,
if legal, should of course be enforceable. Now the
inquiry is, keeping in view the question of public
policy, how does the case at bar differ from the supposed

case? It is said in argument that in this case the husband had been guilty of such conduct as to justify the wife in leaving him, and would have been entitled to a separate support, and it was because of this contract that she consented to live with defendant, and. that the amount was settled upon the wife in pursuance of the agreement. Stripped of the conditions upon which payment is to be made, such a contract might not be questioned. The enforcement of this contract as to payments involves an inquiry into just the facts which we have been urging as against public policy. The payments are to be made "so long as Mrs. Miller shall faithfully observe the terms and conditions of their contract." If, then, she seeks to compel payment, she must do so by averring her compliance in general terms, and the husband may answer, putting in issue the facts, and then follows the inquiry if at some time she did not scold or find fault. Was she not at some time angry? Has she kept the family in a comfortable condition? Now, as before stated, the enforcement of this contract is just as dependent upon the inquiry into such facts as would be the supposed case, and exactly the same evil consequences flow therefrom. It needs no argument to show that such inquiries in public would strike at the very foundations of domestic life and happiness. Public policy dictates that the door of such inquiries shall be closed ; that parties shall not contract in such a manner as to make such inquiries essential to their enforcement. What element could be introduced into a family that would tend more directly to breed discord than this contract? A failure to pay from any cause not her fault renders the husband liable to judgment, and this from month to month, or from year to year. No misfortune frees him from this obligation, save that of the loss or misconduct of his wife. In the very nature of things, a demand for such a payment would engender ill feelings and provoke complaints as to conduct that would otherwise pass unnoticed, or at least without attention. An effort at compulsory payment would almost certainly bring before the courts allegations of

misconduct, based upon incidents of little moment, to be magnified or belittled in the interest of success in court.

Mr. Bishop, in his work on contracts, speaking of the enforcement of contracts for services by the wife to the husband, treats, in part only, of what might be expected on the trial of issues of fact in the case at bar, when he say: "If the wife spends an afternoon in visiting her mother, instead of making jellies, shall the husband bring her into court, to determine the abatement to be made from the sum he had promised her for work in keeping his boarding-house? Shall there be a lawsuit to settle the allowance for tending the baby, which is partly his and partly hers? If her washing is sent to a laundress, and her clothes had been soiled in part in doing his work, and in part in doing her own, and in part in tending the baby of both, shall the judge of a court be employed in instructing the jury how to adjust the account between them?" Section 948. When we think of the thousand occurrences of life to provoke an unpleasant word, to stimulate anger, or a word of fault-finding, and think of the circumstances in domestic life from which they may arise, we can best understand the character of the inquiries likely to arise in the enforcement of the contract in the case at bar. That which should be a sealed book of family history must be opened for public inspection and inquiry. The law, except in cases of necessity, will not justify it.

The cases to which we are referred by appellant are unlike this as to their facts. The case of *Adams v. Adams*, 91 N. Y. 381, is where a suit for divorce was pending, and the suit was settled and dismissed by the plaintiff; she condoning his offense of adultery, and returning to live with him, he giving his note in settlement. The note was held valid. We have not held in this case that, if the plaintiff was seeking to recover on an absolute promise to pay because of any consideration, the contract would not be good, nor do we hold that it would. We only say now that, with the conditions of this contract as to payments, its enforcement is against public policy.

II. The other question presented by the demurrer is as to the contract having for its support a consideration. With our holding on the other branch of the case, it is not necessary for us to determine this, and we do not. In our treatment of the case we have assumed, for the purpose of argument, that there was a consideration to support it. That assumption was only for argument, and is not to be taken as our judgment upon the question. AFFIRMED.