ELIZABETH S. BOHANAN, Appellant, v. A. RAY MAXWELL et al., Appellees.

**HUSBAND AND WIFE:** Contracts In Re Domestic Duties. Agreements that, upon marriage, a woman shall perform for her husband duties which are inherent in the marriage relation, and shall, in return for such services, have all the husband's property upon his death, are without consideration and contrary to public policy.

*Appeal from Adams District Court.*—P. C. WINTER, Judge.

MARCH 8, 1921.

ACTION in equity by plaintiff, widow of William H. Bohanan, deceased, against the administrator and heirs, in which

she seeks to enforce an alleged verbal contract, entered into August 18, 1909, by which she was to nurse, care for, and work for him the remainder of his natural life, in consideration for which deceased was to deed or will all of the property, both real and personal, of which he might be possessed or to which he might be entitled at his death. She asks that she be awarded the personal property, and that certain real estate belonging to deceased, the record title of which stands in the name of two of his children, be conveyed to her. The defendants' demurrer to the petition was sustained, and thereafter plaintiff amended her petition. The amendment was in identically the same language, except as to Paragraph 6, wherein she alleged, in addition, that deceased proposed to plaintiff that he and she would be married, and that plaintiff should nurse, care for, and work for him, the remainder of his natural life, and, in consideration of said marriage and service, and in settlement of the rights of the plaintiff in the property of the deceased, he promised that he would convey to her, by deed or will, all the property, real and personal, and so on. The defendants, claiming that the new petition stated only the same matters as were contained in the original, moved to strike the latter, for that reason. Subject to the motion to strike, they demurred to the second petition. The motion to strike was overruled, but their demurrer was sustained. The plaintiff has appealed from the ruling sustaining the demurrer, and defendants have appealed from the ruling on their motion to strike. Since defendants' motion to strike and their demurrer sought to accomplish the same result, and since their demurrer was sustained, it seems unnecessary to consider the ruling on the motion to strike. The ruling sustaining the demurrer, which presents plaintiff's appeal, is—*Affirmed.*

*Stanley & Stanley* and *D. L. Johnston,* for appellant.

*Meyerhoff & Gibson, O. M. Slaymaker,* and *Thomas L. Maxwell,* for appellees.

PRESTON, J.—It is thought by appellees that the allegations of the amendment are no broader than those in the original petition; that they are substantially the same. We think the amend-

ment is somewhat broader, in that it refers to the agreement as a promise to marry and to convey the property to plaintiff by deed or will in return for her services, whereas the matter of marriage was not referred to in the original petition; otherwise, the language is the same. The language of the original petition is that she was a widow, residing in Nebraska, and deceased was a widower, about 72 years of age, and in poor health; that he requested plaintiff "to nurse, care, and work for him for the remainder of his natural life, and verbally proposed and promised that, in consideration of said services, he would convey to this plaintiff, by deed or will, all the property," etc. The amendment reads that deceased "proposed to the plaintiff that he and she should be married, and that plaintiff nurse, care, and work for him the remainder of his natural life, and that, in consideration of said marriage and services, and in settlement of the rights of the plaintiff in the property of said Bohanan, promised that he would convey to her, by deed or will, all the property," etc. The overruling of defendants' motion to strike the amendment did not hold that the petition, as amended, stated a cause of action, but determined that the amendment should not be stricken because it was, as claimed, the same as the original. As said, the demurrer to the petition as amended was sustained. The question, then, is whether the amended petition states a cause of action. It is further alleged that plaintiff accepted the proposition of deceased, and that he resided with her at her home for about twelve months; and that they were married February 3, 1910; and that thereafter they moved to Iowa, where they resided until the death of deceased, which occurred June 17, 1918; that she performed her agreements, and defendant failed and neglected to perform his part thereof, and to convey and deliver to plaintiff the property. Plaintiff further alleges that, at the time of the death of deceased, he owned two lots in the town of Corning, and occupied the same as his homestead, and other lots in another town, 80 acres of land in Nebraska, another 80 acres of land, and two other lots in the town of Corning; that deeds to a part of said real estate had been executed by deceased and recorded in 1899, conveying the same to defendants Harriett L. Bohanan, Lucy A. McAuley, and Mary Jane Carson; that deceased had con-

tinued in possession of the property after the deeds, adversely, and until his death. It is also alleged that there was personal property in the amount of about $12,000. She asks that the heirs or devisees of deceased be decreed to hold the title of the property in trust for her, including the property covered by the deeds, and for general equitable relief. It will be observed that the deeds referred to were executed some 10 or 11 years before plaintiff was married to the deceased, and before the contract.

1. Appellees raise the question, and contend that the contract, as alleged, is within the statute of frauds, under Code Section 4625; and they say that, though the objection under such statute is to the testimony, the objection may be raised by demurrer, as in this case. On this last proposition they cite *Wiseman v. Thompson*, 94 Iowa 607; *Graves v. Clark*, 101 Iowa 738. That the contract is within the statute, appellees cite *Frazer v. Andrews*, 134 Iowa 621; *Gregory v. Bowlsby*, 115 Iowa 327. It is conceded by appellant that the contract is an antenuptial contract,—they so denominate it in the argument. It is contended by appellant, as to this point, that, whatever the rule may be at law, in an equitable action for specific performance, a court of. equity is not bound by the rigid rules of law as to the statutory requirements of the statute of frauds, or on the question of consideration. The contention is that equity will not permit the statute of frauds to be made an instrument for the perpetration of fraud, and that such would be the effect if, plaintiff having performed her part of the contract, the other party to the contract, or his estate, is not required to perform. They cite and quote from Pomeroy on Equity, without giving the volume or page; also, *Moore v. Allen*, 26 Colo. 197, 200 (77 Am. St. 255); *Peek v. Peek*, 77 Cal. 106, 110; *Burden v. Sheridan*, 36 Iowa 125; 36 Cyc. 649; Code Section 4626; *Devin v. Himer*, 29 Iowa 297; *Stem v. Nysonger*, 69 Iowa 512. The last two cases and the statute are in regard to the exception to the provisions of Section 4625, where the purchase money, or any portion thereof, has been received by the vendor, or when the vendee, with the actual or implied consent of the vendor, has taken and held possession under the contract, etc. They also cite *Larsen v. Johnson*, 78 Wis. 300 (47 N. W. 615). In that case, there was an oral contract entered into by the wife

with defendant, in which the latter was to provide for her comfort and support during life, pay her debts, and take care of, manage, and improve the land; and to that end, the parties should marry and live together on the land, which should be conveyed by the wife to defendant in fee simple, and it was held that such contract was not rendered void by the statute, which requires every agreement made upon a consideration of marriage to be in writing, because the consideration for the conveyance was the provision for the support and comfort of the wife, and not the marriage of the parties. They concede, however, that, in *Bartley v. Greenleaf*, 112 Iowa 82, this court held that a similar contract was in consideration of marriage. But the contention is that it is immaterial whether we adopt the theory of the Wisconsin court or follow our own; because, in either event, where the services have been fully performed, and the marriage entered into, plaintiff is entitled to specific performance of the contract. The question arises whether plaintiff has fully performed the contract, within the contemplation of law. True, she alleges that the marriage was consummated, and she says that she performed the work until her husband's death. But for more than eight years of that time she was his wife, and was under certain obligations to her husband, as such, in regard to her services. No separate claim is made by her for her services rendered after the agreement and before the marriage. She claims full performance, and asks that all the property be conveyed to her. This feature of the case we regard as the more important one, and for that reason we do not enter into an extended discussion of the question as to the statute of frauds. It should have been said that appellant cites 13 Ruling Case Law 1015, 1020, and *Wright v. Wright*, 114 Iowa 748, to the proposition that a marriage is a sufficient consideration to support an antenuptial contract and settlement.

2. Counsel for either side concede that they find no Iowa case directly in point on the questions they both concede to be the main point in the case. Appellant says that husband and wife may contract with each other as to any matter outside the marriage relation, and the cases they cite are upon that theory. It seems to us that thereby appellant, in effect, concedes the weakness of their position, because we do not understand ap-

pellees to dispute that proposition; but the vital point is whether this applies to the duties that a wife, as such, owes to her husband. Appellant, in one part of the argument, seeks to avoid this by saying that the petition alleged that plaintiff agreed to nurse, care for, and work for the deceased for the remainder of his natural life, and that the word "work" might include other services than those inherent in the marriage contract. It is doubtless true that, if she agreed to act as cashier of her husband's bank, if he were a banker, this might be work outside services inherent in the marriage contract. The trouble is that the petition does not allege anything of that sort. There is nothing in the petition to indicate that the work she was to do was other than the ordinary work of a housewife. Such is the clear import of the word, in connection with the other matters alleged in the petition. Nor is there any allegation or claim that she did any work outside that required by the marriage relation. As said, the cases cited are to the proposition that services rendered the husband outside domestic duties may be validly contracted for between them. They cite *Carse v. Reticker*, 95 Iowa 25. In that case, the husband was a sheriff, and entitled to the county jail's feeding privilege. The husband proposed to his wife that they move to the jail, and undertake this work. She disliked the proposed arrangement, and refused to go. Thereupon, he proposed that, if she would move to the jail and do such work, she would have the profits arising therefrom, and he would relinquish his claim thereto. She agreed to and carried out the arrangement. It was held a valid contract. The court said:

"It is further claimed that the agreement was without consideration, because it was the marital duty of A. C. Reticker to perform the services. We cannot accede to this doctrine. That it is the duty of the wife, as 'helpmeet,' to attend, without compensation, to all the ordinary household duties, and labor faithfully to advance her husband's interests, is true. Yet it certainly is not her duty, unless she desires to incur it, to undertake the boarding of a large number of prisoners who may for the time being come under the charge of her husband. These defendants had the undoubted right to contract with each other

with reference to the board to be furnished the inmates of the jail, the same as if the marital relation did not exist. J. M. Reticker had the contract with the county to furnish the board, and could sublet it to whomsoever he wished—even to his wife, if she saw fit to engage in the work. *Gilbert v. Glenny,* 75 Iowa 513; *Mewhirter v. Hatten,* 42 Iowa 288; *Hoag v. Martin,* 80 Iowa 714.''

See, also, *Tucker v. Anderson,* 172 Iowa 277, 284, where the wife performed services for a person other than her husband, with her husband's consent, he making no claim for the money due her under the contract with the third party. *Ford v. Curd,* 150 Ky. 738 (43 L. R. A. [N. S.] 685, 691, and cases cited in note).

Appellant also cites, to the same proposition, *In re Estate of Cormick,* 100 Neb. 669, where, following marriage, the wife was employed by the husband in the capacity of a private detective, and assistant to him. Her duties were to look after all correspondence, make out reports, outlining instructions to operatives, and so on. The court said that an express contract between husband and wife that she shall receive reasonable compensation for extra and unusual services rendered him, outside of her domestic duties, is valid, and, when established by a preponderance of the evidence, is enforcible against him or his estate. Also, to the same effect, *Nuding v. Urich,* 169 Pa. St. 289, cited in the *Cormick* case, holding that a husband may contract directly with his wife for the performance of extra and unusual services in the course of his business, outside the family relation, etc. Another case to the same effect, where a husband contracted to pay his wife for services as a clerk in his store, was held valid. Plaintiff is demanding all of the property of deceased in full performance of the contract, which she says she has fully performed on her part, because of the marriage and her nursing, care, and work for deceased from the time of the making of the contract until her husband's death; but, for about eight years of that time, she was his wife, and is claiming for her services as such. Before she can recover as for full performance, she must show that she has performed her contract in its entirety, and that her services after the marriage were such as she was entitled to contract for, and to demand

compensation for. It was not the contract that she should have all his property in consideration of the marriage and her services for a year or so, up to the time of the marriage. Defendants contend that, by the marriage, the contract as to services thereafter was canceled, and that thereby she put it beyond her power to perform, and that, as to services performed by her after the marriage, there was no consideration, since the services it is alleged she. did perform were not extra and unusual services, outside those inherent in the marriage contract. The legislation in this state upon the subject of the rights of married women has only resulted in abrogating their common-law status to the extent set forth in the various statutes. *Grant v. Green,* 41 Iowa 88; *Heacock v. Heacock,* 108 Iowa 540. The *Heacock* case also held that husband and wife cannot contract with each other to secure the performance of their marital rights and duties. See, also, *Miller v. Miller,* 78 Iowa 177. In recent years,—in 1911 and 1915,—the legislature has made some changes in regard to the relations between husband and wife, enlarging her rights. But these statutory provisions were enacted since the making of the alleged contract between plaintiff and deceased, and since their marriage. Such enactments do not deprive the husband of the wife's ordinary services as wife, or permit her to demand or receive compensation therefor from him. We refer to Section 3477-a, Supplemental Supplement, 1915. This matter will be referred to later.

*Bartley v. Greenleaf,* supra, was an action in equity, like the one at bar, to enforce the specific performance of a contract. In that case, as here, the agreement was that plaintiff was to keep, care for, and look after decedent during his life, and in consideration thereof, he was to devise and bequeath his property to her. Decedent died before the date set for the consummation of the marriage. It was held, as before stated, that this was a marriage contract; and the court further said that, if it be held that the allegations of the petition are broad enough to include a consideration in addition to that of marriage, still the marriage must be held to be a part of the consideration, and under such circumstances, specific performance will not be decreed. In the instant case, the marriage was consummated; but if it be thought, as contended by appellant, that the services to be per-

formed after marriage were a part of the consideration, then, in that regard, such services could not be performed, except in the sense that it was plaintiff's duty to perform them without compensation. So that, applying the rule of the *Bartley* case to the rendition of such services, instead of the marriage, specific performance could not be enforced, since a part of the consideration was the agreement to perform services for which plaintiff would not be entitled to compensation. Appellees cite *In re Callister,* 153 N. Y. 294 (60 Am. St. 620). In that case, the employment was as a copyist or clerk in the law office of the deceased, which services would doubtless be considered, at the present time, as outside her services as wife; but the discussion is applicable to a case where the services claimed for were such as inhered in the marriage contract. In that case, he had married about a year before his death, and the plaintiff brought suit against the estate, in which she claimed that, a year before the marriage, she had been employed by him as copyist or clerk, and that the employment was to continue so long as he practiced law, but payment was not to be made until he retired from practice. She began performance of the services about a year prior to the marriage, and continued until his death. The court said, in part, that the contract was valid in all respects until the intermarriage of the parties thereto, but from that time forward, and by virtue thereof, the husband became entitled to the services of his wife without paying therefor; that, by entering into the marriage contract, she impliedly agreed to render services for her husband without payment; that the right of the husband to his wife's services was an essential part of the marriage contract, the same as his obligation to support her.

"There was a pervading and irreconcilable conflict between them [the contract to perform services and the marriage contract], and·hence the presumption of law is that the later contract so modified the earlier as to abrogate or supersede it. While there may be antenuptial contracts made in view of marriage, and to be enforced thereafter, there can be no modified or conditional marriage contract, whereby the services of the wife are excepted from the usual effect of marriage. Necessarily, all marriage contracts are alike in their legal operation, which

cannot be changed by agreement, nor modified in any way except by legislation.''

Strictly speaking, the contract set up by plaintiff is not an antenuptial contract, though appellant, in argument, calls it such. Nor is it, strictly, a marriage settlement. The action is brought to enforce, by specific performance, a parol contract, the terms of which have been stated. *Michigan Trust Co. v. Chapin,* 106 Mich. 384 (58 Am. St. 490), is to the same effect, and holds that such a contract is contrary to public policy, and that the promise to pay her for such services, which the law made it her duty to perform, without consideration, is void and unenforcible. See, also, *In re Estate of Cormick,* supra, cited also in L. R. A. 1917D 265, with annotations. In that case, it was held that an express contract between husband and wife that she shall receive compensation for extra and unusual services rendered him outside of her domestic duties is valid and enforcible. It is said in the annotation, at page 269, that:

''It seems to be unquestioned that at common law a contract by a husband to pay his wife for her services was invalid. * * * The strictness and rigidity of the common-law rules in this respect, however, have been greatly relaxed. * * * As a consequence of this relaxation, the now important question is as to whether or not these various statutes * * * so enlarge the rights of a wife as to permit her to validly contract with her husband for her services in any manner, and if so, as to what kind or kinds of services. Upon these questions there is a wide divergence of conclusion, but this is largely due to the variations in the * * * different acts. * * * Nevertheless, it seems to be universally conceded, even in those jurisdictions which have very broad statutes, that a married woman, unless permitted by positive legislative enactment, cannot contract with her husband for services which are imposed by her marital relations, the courts maintaining, not only that it would be against all public policy to uphold such contracts, but that they are without consideration. 'Whatever services a wife renders in her home for her husband cannot be on her sole and separate account. They are rendered on her husband's account, in the discharge of a duty which she owes him or his family, or in the discharge of a duty which he owes to the members of his household. It would operate dis-

asterously upon domestic life and breed discord and mischief
if the wife could contract with her husband for the payment of
services to be rendered for him in his home, if she could exact
compensation for services, disagreeable or otherwise, rendered
to members of his family, if she could sue him upon such con-
tracts, and establish them upon the disputed and conflicting
testimony of the members of the household.  To allow such con-
tracts would degrade the wife by making her a menial and a
servant in the home where she should discharge marital duties
in loving and devoted ministrations, and frauds upon creditors
would be greatly facilitated, as the wife could frequently absorb
all her husband's property in the payment of her services, ren-
dered under such secret, unknown contracts.' ''

We may say in passing, too, that to uphold such contracts
would open the door to speculations and to fraud upon heirs,
as well as creditors, etc.  See, also, *Coleman v. Burr*, 93 N. Y. 17
(45 Am. Rep. 160), holding that a statutory authorization to a
married woman to perform any labor or service on her sole and
separate account, and to hold the earnings therefrom as her
sole and separate property, did not enable a married woman to
contract with her husband for compensation for services ren-
dered in their home, which were in line with duties owed to the
house, because of the marital relation, the ground being that
such services were not rendered upon "her sole and separate
account."  In that case, the services rendered were the taking
care of the husband's invalid mother, who lived as a member of
his family, the court holding that such services were within the
line of duties arising from the marital relation.  We find similar
language in *Miller v. Miller*, 78 Iowa 177, 183.  In that case, the
wife brought action against her husband to recover money al-
leged to be due her on a written contract, whereby the parties
mutually agreed to ignore and never allude again to former
matters of dispute between them, and to refrain from fault-
finding and to behave respectfully and treat each other fairly,
and live together as husband and wife, and faithfully observe
the marriage relation, and live virtuously, and in which she
agreed to keep her home and family in a comfortable and rea-
sonably good condition, and the husband agreed to provide for
the necessary expenses of the family, and, in addition thereto,

to pay the wife, for her individual use, a certain amount of money a year, in monthly payments, so long as she faithfully observed the conditions of the contract. It was held that such a contract was void, as being against public policy and without consideration. The court said:

"It needs no argument to show that such inquiries [as to whether each had performed their several duties, according to the contract] in public would strike at the very foundation of domestic life and happiness. Public policy dictates that the door of such inquiries shall be closed; that parties shall not contract in such a manner as to make such inquiries essential to their enforcement. * * * In the very nature of things, a demand for such a payment would engender ill feelings and provoke complaints as to conduct that would otherwise pass unnoticed, or at least without attention. An effort at compulsory payment would almost certainly bring before the courts allegations of misconduct, based upon incidents of little moment, to be magnified or belittled in the interest of success in court."

The opinion quotes from Bishop on Contracts (2d Ed.), Section 948, in part as follows:

"If the wife spends an afternoon in visiting her mother, instead of making jellies, shall the husband bring her into court to determine the abatement to be made from the sum he had promised her for work in keeping his boarding house? Shall there be a law suit to settle the allowance for attending the baby, which is partly his and partly hers? * * * Shall the judge of a court be employed in instructing the jury how to adjust the account between them?"

We are of opinion that, in so far as plaintiff relies upon services rendered by her for her husband, after the marriage, as full performance of her contract, they were without consideration, and contrary to public policy, and that specific performance may not be had. In so far as the contract has been performed by the consummation of the marriage, we will assume that her motives in entering into the marriage itself were not mercenary. We will assume, also, that deceased performed his duty as a husband in giving her support and a home, in return for services rendered by her for him. Of course, the husband could not demand compensation of his wife for the per-

formance of his duty in furnishing her the support which the marriage contract and relation impose upon him.

3. Code Section 3477-a authorizes recovery by a woman or by her estate for personal injury. In such a case, she may recover for loss of time, medical attendance, and other expenses incurred as a result thereof, in addition to any elements of damages recoverable by common law; and if such injury causes death, her administrator may sue and recover for her estate the value of her services as a wife or mother, or both, in such sum as the jury may deem proportionate to the injury resulting in her death, in addition to such damages as are recoverable by common law; and so on. The purpose of this statute was probably twofold: First, to enlarge the rights of married women; and second, to authorize a recovery in one action, rather than two actions, as formerly, wherein she could sue for a part of the damages, and her husband must sue for others. Under the statute, the husband is precluded from any recovery, unless, possibly, the right of consortium. This statute has been passed upon in *Jacobson v. Fullerton*, 181 Iowa 1195; *Bridenstine v. Iowa City Elec. R. Co.*, 181 Iowa 1124; *Woodard v. City of Des Moines*, 182 Iowa 1102. This statute has reference to recovery from third persons. We find nothing in it enlarging a married woman's rights so as to permit her to contract with her husband for compensation for services inherent in the contract of marriage. Appellant does not so claim. We are of opinion that the ruling on the demurrer by the district court was right, and the judgment is—*Affirmed*.

EVANS, C. J., WEAVER and DE GRAFF, JJ., concur.