IN RE ESTATE OF JAMES STRAKA, JR.
(On Claim of Elizabeth Krabbenhoft.)

No. 43885.

October 19, 1937.

Schoenthaler & Lee, for claimant, appellant.

George Buresh and James E. Remley, for James Straka, Sr., appellee.

Richards, J.—This controversy arises in probate, upon a claim filed in the course of the administration of a decedent's estate. The decedent, James Straka, Jr., and the claimant Elizabeth Krabbenhoft, were husband and wife from June 23, 1926, until divorced on December 17, 1929. Remarrying on February 19, 1930, their marital status continued until a second divorce decree was entered on January 27, 1931. When decedent and claimant were first married the latter had reached the age of 20 years, and had been an employee in a restaurant. Her maiden name was Elizabeth Hughson. Decedent was a widower. He had two children, 5 and 6 years old. These children were members of the family of decedent and claimant while the marriage status existed. James Straka, Jr., departed this life in October, 1935. Against the administrator of his estate Elizabeth Krabbenhoft filed a claim. The administrator resisting its allowance, the claim came on for trial upon its merits, before a jury. At the close of the evidence on part of claimant a motion for a directed verdict against her was made and was sustained. A judgment disallowing the claim was entered accordingly. Therefrom claimant has appealed.

Claimant's alleged cause of action is set out in the claim that she filed. The demand therein made was for $2,826.74, alleged to be owing upon a written instrument, described in the claim as being a promissory note. This instrument, a copy of which was attached to the claim, was in the following words:

"On this day, Dec. 11, 1930, I hereby agree to pay the sum of Two Thousand Five Hundred Dollars ($2,500.) as wages for five (5) years work to Elizabeth Hughson, (My former wife).

"This to be paid in five (5) yearly installments of five hundred dollars ($500.) each. The first payment due Jan. 1, 1932.

"All former divorce agreements, or any agreements whatsoever, or payments made, or present divorce payments do not effect this agreement.

"J. G. Straka, Jr."

Concerning the foregoing written instrument the claimant made the following allegation, in the claim she filed, to wit:

"That said note was given for a valuable consideration, and in compensation for extra and unusual services rendered and performed by said Elizabeth Krabbenhoft for James Straka, Jr., outside of her domestic duties."

It is to be noted that by the terms of this instrument decedent promised to pay $2,500 to his wife, as wages for work. Parenthetically it may be stated that the administrator-appellee points out that claimant was not the "former wife" of James Straka, Jr., when the instrument was made, the marriage relation in fact existing until January 27, 1931. It was also established by claimant's evidence that decedent and claimant lived together as husband and wife at their home on decedent's farm during the entire periods of time that they were married to each other. And claimant concedes that it was only during such periods of time that any work or services were performed by her that have anything to do with her claim. It is also shown by the record that during and prior to these periods of time the occupation of decedent was that of farming.

■■■ Claimant concedes, and this court has held, that agreements that a wife be paid by a husband for the performance of obligations that are incident to the marital relation violate public policy and are unenforceable. Bohanan v. Maxwell, 190 Iowa 1308, 181 N. W. 683, 14 A. L. R. 1004; Grant v. Green, 41 Iowa 88; Miller v. Miller, 78 Iowa 177, 35 N. W. 464, 42 N. W. 641, 16 Am. St. Rep. 431. But claimant says that this well established rule of law does not have application to her cause of action because of certain facts. The substance of these alleged facts is that the instrument upon which she bases her claim was in com-

pensation for extra and unusual services rendered outside of claimant's domestic duties. Claimant sets out these alleged facts in the claim she filed, and on the trial she introduced or proffered her evidence to establish them. She then rested her case.

The record that was before the trial court as it had been made by claimant, when the motion for directed verdict was submitted, warranted the ruling that was made. One of the reasons for this conclusion is found in the evidence that had been introduced by claimant in an effort to establish her allegation that the instrument was given in compensation for services rendered by her outside of her domestic duties. If it be assumed, solely for purposes of discussion, that this evidence tended to establish that the instrument was given in compensation for services rendered outside claimant's domestic duties, nevertheless from this same evidence a jury would necessarily also have found that compensation for purely domestic duties was included in the $2,500, as a part thereof. The result is, under the assumption above mentioned, at least a portion of the consideration was violative of public policy and uncollectible. Upon the record the alleged nonmarital services, if there were any, and the services performed as incidents to the marriage relation, are inseparable, and the compensation not apportionable. This state of the record, of itself, was a sufficient ground for sustaining the motion, resulting in disallowance of the claim. Bohanan v. Maxwell, 190 Iowa 1308, 181 N. W. 683, 14 A. L. R. 1004; Rosenbaum Bros. v. Levitt, 109 Iowa 292, 80 N. W. 393; Cole v. Brown-Hurley Hardware Co., 139 Iowa 487, 117 N. W. 746, 18 L. R. A. (N. S.) 1161, 16 Ann. Cas. 846. Restatement Law of Contracts, Sections 606, 607.

The above-mentioned evidence of claimant with respect to there having been included in the instrument compensation for performance of marital duties (passing the query whether the evidence establishes that the instrument was in fact but an unexecuted gift), consists of testimony of one witness and proffered testimony of another, to the effect that to each witness, on separate occasions, decedent made admissions. Of these witnesses one was the attorney employed by claimant in an attempted collection of the instrument in 1935. He also had somewhat to do with the preparation and assignment for trial of this claim. The other witness was the mother of the claimant.

Her testimony was proffered. The testimony of the attorney was as follows:

"Q. What, if anything else, did he (the decedent) say in regard to claimant's Exhibit A? A. I asked him what was the purpose of giving the paper to his former wife; he said it was *in appreciation* of what she had done for him on the farm, *and he went ahead,* he was there about an hour, *and explained what she had done;* when she first came there the two little children were five and six, I believe, boy and girl, they was by a former wife, the former wife died; *she came there and took care of the children as good as a mother, as good as any mother,* and said the children become attached to her and thought more of her than of him; and he spoke also about how she would go out in the field and pick corn; and how he had two threshing machines and in the fall he would be gone two or three weeks at a time, and he would be gone before daylight and wouldn't get back until after night, and Elizabeth was true as steel, he could always trust her with everything he left her to do, *and she was always faithful,* raised around 500 chickens for him, and how she took care of the hogs on the farm; and there were different things besides that he mentioned she did; finally he wound up by saying she was better than any hired man because she would work early and late, *and she was faithful."* (Italics supplied.)

The profert of the testimony of the mother of claimant was to the effect that she would testify that when the instrument was signed and handed to claimant decedent said to claimant that he was giving her the note in payment of services which she had rendered for extra work, and also was giving her the note as a reward for the faithful services she had rendered, and in appreciation thereof.

This testimony of decedent's alleged admissions against interest, being so circumstanced that it was not susceptible of denial or explanation, and its worth being measured by the extent to which the witnesses may have been capable and desirous of accurately recounting what decedent may have said, if anything, should be closely scrutinized and cautiously received. In the proffered testimony of the mother of claimant there is the additional factor that a considerable number of years had elapsed since the occurrence, the recollection of which constituted the profert. Testimony of this character has been dis-

cussed in In re Estate of Rich, 199 Iowa 902, 200 N. W. 713; Ellis v. Newell, 120 Iowa 71, 94 N. W. 463, and other Iowa cases. Taking into consideration the whole of this testimony introduced and proffered by claimant, and viewing it in a light as favorable to claimant as it is reasonably possible to view testimony of this character, we are satisfied, as already stated, that the record that was before the trial court when it ruled on the motion made necessary the sustaining of the motion because this record made by claimant showed that a part of the compensation included in the $2,500 (still assuming that the instrument was not in fact but an unexecuted gift) was for performance of duties contemplated by the marital relation. From the evidence of the attorney no other deduction can be made. In the proffered testimony of the mother the same element is included, that is, that the so-called note, additionally to any alleged extra services, was given as a reward for the faithful services claimant had performed and in appreciation thereof. That these faithful services, referred to in the mother's proffered testimony, included such marital duties as the faithful care claimant had given the children, is established by the record made by claimant, nor do we find in the record any contradiction thereof, nor any testimony from which any contrary inference may reasonably be drawn.

■■■ In one part of claimant's argument she urges that in any event the case should have been submitted to the jury because of section 9440, Code 1935, which provides:

"All contracts in writing, signed by the party to be bound * * * shall import a consideration."

We have held adversely to this contention in Lane v. Richards, 119 Iowa 24, 27, 91 N. W. 786, 787, in which case we said:

"If no consideration were named in the contract, or if its language relating thereto were so ambiguous as to be incapable of construction, there can be no doubt as to the applicability of the statute. But here the parties have undertaken to and have expressly stated in the instrument the consideration upon which it rests, and this recital in itself clearly and distinctly negatives the fact that any other, larger or different consideration was in the minds of the parties. The statute was not intended to and

does not furnish the consideration for contracts, and, in our judgment, it was only intended to import a consideration when the parties had failed to express it themselves; otherwise the solemn declaration in a contract that it rested upon a certain consideration would be denied, and the contract relating thereto would be annulled by force of the statute, and a foreign consideration substituted therefor. * * * But were we to adopt the view of the statute contended for by the appellants, whenever the expressed consideration should be held invalid the statute would at once provide another and a valid one, regardless of the contract of the parties.''

Other questions found in the argument, such as whether services performed by claimant at the farm home were foreign to the marital relation and if so whether there was an express agreement for compensation, need not be considered. Sufficient grounds for sustaining the motion having been pointed out the case is affirmed.—Affirmed.

HAMILTON, C. J., and MITCHELL, SAGER, PARSONS, and ANDERSON, JJ., concur.