# IN THE SUPREME COURT OF IOWA

No. 07–0563

Filed July 24, 2009

**IN RE THE MARRIAGE OF VERGESTENE COOPER and BERNARD COOPER**

Upon the Petition of

**VERGESTENE COOPER,**

Appellee,

And Concerning

**BERNARD COOPER,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler (temporary support order) and Jon C. Fister (final decree), Judges.

Petitioner appeals property distribution in dissolution action asserting that the district court erred in considering reconciliation agreement. **DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Sara Kersenbrock of Kersenbrock Law Office, Waterloo, for appellant.

Gary J. Boveia of Boveia Law Firm, Waverly, for appellee.

**APPEL, Justice.**

In this case, we are called upon to consider the validity of a reconciliation agreement signed after the husband engaged in an extramarital affair. The wife sought to enforce the agreement in a subsequent dissolution action after discovering that the extramarital relationship had not ended. The district court found the postnuptial reconciliation agreement valid and considered its terms when equitably dividing the couple's property. The court of appeals reversed on the ground that the reconciliation agreement injected fault into the distribution of property contrary to established public policy. Upon further review, we conclude that the agreement is not enforceable under Iowa law.

## I. Facts and Procedural Background.

Bernard and Vergestene Cooper were married in 1972. After the marriage, Bernard received a master's degree in school administration. He worked for Waterloo Community Schools, where he began in 1970 as an elementary school teacher and rose through the ranks until his retirement in 2003 as director of student services. Vergestene works as a data technician for the University of Northern Iowa. She analyzes data related to student testing and teaching evaluations and tracks computer supply inventories.

In 2000, Vergestene discovered that Bernard was romantically involved with another woman. The discovery of the affair caused marital discord. Bernard wanted the marriage to continue, however, and was willing to make substantial promises regarding his future behavior in order to achieve reconciliation.

Some of the promises were reduced to writing and signed by both spouses on May 29. In the document, Bernard agreed that "if any of my

indiscretions lead to and/or are cause of a separation or divorce . . . I will accept full responsibilities [*sic*] of my action." In the event of a permanent breakdown in the marital relationship, Bernard further agreed to pay $2600 a month for household expenses, increased by a percentage of Bernard's annual raises, to maintain life insurance, retirement accounts, and family health insurance, to provide for the college expenses of their youngest daughter, and to pay one-half of all future retirement payments to Vergestene. On June 26, the reconciliation agreement was reformatted, re-signed by Bernard and Vergestene, and notarized.

In summer 2005, Bernard leased an apartment, gathered his belongings, and left the family residence without advising Vergestene of his plans. Vergestene and their daughters searched for Bernard, eventually learning from the bank that he had changed his address. Vergestene confronted her husband at his new apartment. She testified at trial that when she confronted Bernard, he admitted that he had continued his prior affair.

Vergestene filed for divorce in September 2005. She sought a temporary order of support and attached the notarized reconciliation agreement to her pleading. The district court granted temporary support in the amount of $2800 per month. Bernard filed a motion to reconsider. At the hearing, Bernard claimed not to remember whether he signed the reconciliation agreement, testimony which the district court discounted in declining to overrule the previous order.

At trial, the parties introduced evidence related to financial matters. In addition, Vergestene offered and the court admitted cellular phone records of Bernard and his alleged paramour showing hundreds of phone conversations and intimate messages.

The district court order, judgment, and decree found in favor of Vergestene on most issues of fact and law. The district court found that the terms of the reconciliation agreement, though generous to Vergestene, were not unconscionable, and that, despite Bernard's denials, the affair likely continued and caused the parties' separation, thereby triggering the terms of the reconciliation agreement. Other than spousal support, the district court's property distribution, including a $25,000 award of attorneys' fees, closely tracked the reconciliation agreement.

Bernard appealed both the temporary support order as well as the final property distribution. We transferred the case to the court of appeals. The court of appeals affirmed the district court with respect to the temporary order, but reversed the district court with respect to the final property distribution. We granted further review.

## II. Standard of Review.

This court reviews dissolution cases de novo. *In re Marriage of Sullins*, 715 N.W.2d 242, 247 (Iowa 2006). Although our review is de novo, " 'we give weight to the trial court's factual findings, especially with respect to the credibility of the witnesses.' " *Id.* (quoting *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003)).

## III. Discussion.

**A. Temporary Support and Attorneys' Fee Order.** Bernard claims the district court's temporary order of support and attorneys' fees was flawed because the district court failed to consider the factors outlined in Iowa Code section 598.21(3) (2005). He claims that the district court simply relied upon the reconciliation agreement to establish support.

We find Bernard's appeal of the temporary support order untimely. As dictated by our rules of appellate procedure we have previously found that

> temporary orders involving financial assistance in dissolution cases are final judgments which are appealable as a matter of right . . . and must be appealed within 30 days from the district court decision in order to preserve the right to contest the award of assistance.

*In re Marriage of Denly*, 590 N.W.2d 48, 50 (Iowa 1999). Taken more than a year after the district court's judgment on his motion to reconsider, Bernard's current appeal is untimely, and as a result, this court lacks jurisdiction to consider it. Like the court of appeals, we further note that Bernard filed a timely notice of appeal of the temporary support order which he later voluntarily dismissed. His attempt to revitalize that appeal here cannot be sustained.

**B. Final Property Distribution.** The thrust of Bernard's claim on appeal is that the parties' reconciliation agreement is unenforceable as it violates Iowa's public policy by considering fault in dissolution proceedings. Because the reconciliation agreement violates public policy, Bernard claims that the district court committed error by relying upon it in equitably distributing the marital property.

There is no provision of Iowa statutory law that expressly authorizes or prohibits enforcement of reconciliation agreements between spouses. While Iowa Code section 598.21(1)(*k*) states that any mutual agreement made by the parties *may* be considered by the court, this provision does not provide for enforcement of reconciliation agreements specifically, but only that mutual agreements may be considered, among other factors, in making property divisions. Likewise, section 598.21(1)(*m*) is a catch-all provision which allows the district court to consider any other relevant factor in equitably distributing property.

While statutory law is silent on the issue, there is dated Iowa case law related to the enforceability of reconciliation agreements. In *Miller v. Miller*, 78 Iowa 177, 35 N.W. 464 (1887) [hereinafter *Miller I*], we considered the validity of a written reconciliation agreement between married spouses. *Miller I,* 78 Iowa at 178, 35 N.W. at 464. The agreement at issue in *Miller I* called upon the husband and wife, "in the interests of peace and for the best interests of each other and of their family," to ignore and bury "[a]ll past causes and subjects of dispute, disagreement, and complaint of whatever character or kind. . . ." *Id.* The agreement further provided that each party:

> refrain from scolding, fault-finding, and anger in so far as relates to the future, and to use every means within their power to promote peace and harmony, and that each shall behave respectfully and fairly treat each other . . . .

*Id.* The parties further agreed that Mrs. Miller "shall keep her home and family in a comfortable and reasonably good condition" and that they would "live together as husband and wife and observe faithfully the marriage relation, and each to live virtuously with the other." *Id.* at 178–79, 35 N.W. at 464. In return, Mr. Miller would provide the necessary expenses to the family and further pay Mrs. Miller sixteen and two-thirds dollars per month, in advance, so long as she lived up to the terms and conditions of the contract. *Id.* at 179, 35 N.W. at 464.

When Mrs. Miller sued to enforce the agreement, this court refused to do so. *Id.* The court found that the agreement was without consideration and against public policy. *Id.* The court concluded that the contract bound Mrs. Miller only to do what she was already legally bound to do. *Id.*

Two years later, this court agreed to rehear *Miller I*. *Miller v. Miller*, 78 Iowa 177, 179, 42 N.W. 641, 641 (1889) [hereinafter *Miller II*]. On

rehearing, Mrs. Miller asserted that the contract was a postnuptial settlement sanctioned by law. The court again rejected enforcement of the contract. *Miller II*, 78 Iowa at 185, 42 N.W. at 643. The court stated that the contract touched upon matters "pertaining so directly and exclusively to the home" that they are not to become matters of public concern or policy. *Id.* at 182, 42 N.W. at 642.

The reconciliation agreement in *Miller I & II*, of course, involved vague and ambiguous terms that would have made enforcement difficult under any circumstances. Subsequent case law, however, reinforced the notion that contracts between spouses which purported to govern their intimate relationships would not be enforced. For example, in *Heacock v. Heacock*, 108 Iowa 540, 542, 79 N.W. 353, 354 (1899), this court held that a husband and wife could not contract over the performance of marital duties. Two decades later, in *Bohanan v. Maxwell*, 190 Iowa 1308, 1310, 1319–20, 181 N.W. 683, 684, 688 (1921), this court refused to enforce an agreement where a woman promised to marry and subsequently care for a man until his death in exchange for a generous property settlement. Finally, in *In re Straka's Estate*, 224 Iowa 109, 111–12, 275 N.W. 490, 491–92 (1937), this court refused to enforce a contract between a husband and wife that provided compensation for the wife's domestic services because, among other things, the consideration for such an agreement violated public policy.

We note that this case does not involve a reconciliation agreement where the parties let go of the acrimonious past, agreed to continue their marriage, and chose to structure their financial relationship in the event of a future divorce with full disclosure and the assistance of independent counsel. *See Flansburg v. Flansburg*, 581 N.E.2d 430, 437 (Ind. Ct. App. 1991). Instead, this case involves a reconciliation agreement which has

as a condition precedent the sexual conduct of the parties within the marital relationship. A unifying theme of our historic case law is that contracts which attempt to regulate the conduct of spouses during the marital relationship are not enforceable.

Although our precedents are relatively old, we see no reason to depart from them now. The relationship between spouses cannot be regulated by contracts that are plead and proved in the courts as if the matter involved the timely delivery of a crate of oranges. We do not wish to create a bargaining environment where sexual fidelity or harmonious relationships are key variables.

Further, like our predecessors, we reject the idea of injecting the courts into the complex web of interpersonal relationships and the inevitable he-said-she-said battles that would arise in contracts that can be enforced only through probing of the nature of the marital relationship. Indeed, our no-fault divorce law is designed to limit acrimonious proceedings. Further, a contrary approach would empower spouses to seek an end-run around our no-fault divorce laws through private contracts. *See Diosdado v. Diosdado*, 118 Cal. Rptr. 2d 494, 496 (Ct. App. 2002) (finding an agreement which provided for a $50,000 penalty upon infidelity contrary to the public policy of no-fault divorce laws).

As a result, we hold that the reconciliation agreement in this case is void. We further believe that as a void contract, it should be given no weight in the dissolution proceedings. We recognize that Iowa Code section 598.21(1)(*k*) and (*m*) authorizes the court to consider any written agreements and other factors that the court determines to be relevant. We, nevertheless, conclude that these statutory provisions do not extend to agreements between spouses that are void, such as the one presented

here, because they intrude on the intimacies of the marital relationship and inject fault back into dissolution proceedings. On remand, the district court should divide the property in an equitable fashion without regard to the reconciliation agreement.

## IV. Conclusion.

For the above reasons, the decision of the court of appeals is affirmed, the judgment of the district court is affirmed in part and reversed in part, and the matter is remanded for the entry of an order equitably dividing the parties' property without regard to the void contract.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**