(No. 32024.—

MARY K. WIEGAND, Appellee, *vs.* HENRY E. WIEGAND, Appellant.

*Opinion filed November 27, 1951—Rehearing denied Jan. 21, 1952.*

J. J. Ludens, of Sterling, for appellant.

Ward & Ward, of Sterling, for appellee.

Mr. Chief Justice Daily delivered the opinion of the court:

Henry E. Wiegand, appellant, and Mary K. Wiegand, appellee and cross appellant, were married in 1927 and lived together until August, 1948, when they separated. In 1936, they purchased, as joint tenants, a 4.7-acre tract of land in Whiteside County and later erected thereon a structure described as a "double garage" in which they resided until their separation. Appellant continues to reside there. The parties have no children and thus far neither has filed suit for divorce or separate maintenance. The appeals before us arise from a suit filed by appellee in the circuit court of Whiteside County wherein she prayed for

partition of the above-described real estate, an accounting of personal property alleged to be jointly owned, and for the return of personal property in appellant's possession. Appellant's answer denied her right to partition and by counterclaim he sought to recover $7500 he had paid to appellee in August, 1948, allegedly in return for her promise to come back and live with him, and further, alleged that he was entitled to a homestead in the real estate in the event of partition. After a hearing before the master, the trial court entered a decree which granted partition, denied the accounting and ordered the return of appellee's personal property. As to the prayer of appellant's counterclaim, the decree found that he was entitled to a homestead in the real estate, but refused to order the return of the $7500. The real estate was found not to be susceptible of division and was ordered sold.

Coming directly to this court, appellant contends: (1) that the court erred in ordering the sale of the real estate without his written assent to the sale of his homestead interest; and, (2) that the court erred in not ordering appellee to return to him the sum of $7500. For cross error appellee asserts that the court erred in awarding the entire homestead to her husband and insists that, as joint tenants, they owned it in equal shares. Homestead is an estate in land and not a mere exemption, thus a freehold is involved giving this court jurisdiction on direct appeal. *Rossiter* v. *Soper,* 384 Ill. 47; *Ketcham* v. *Ketcham,* 269 Ill. 584; *Garwood* v. *Garwood,* 244 Ill. 580.

In contending that it was error for the court to order the sale of his homestead without first obtaining his written assent, appellant relies on section 20 of the Partition Act, (Ill. Rev. Stat. 1949, chap. 106, par. 63,) wherein it is provided that the court may order sale of a homestead, or of a life estate, along with the rest of the premises being partitioned, when the owner of such interest is a party to the suit and has filed his written assent to the sale in the

court where the proceeding is pending. It should be noted that section 20 is, to the extent it is applicable in this case, substantially the same as section 32 of the former Partition Act, (Ill. Rev. Stat. 1874, chap. 106, par. 32,) which it replaced as of January 1, 1950. Appellant relies completely on the statute, and the effect of his argument is that its mandate leaves a court powerless in any case to order the sale of a homestead in a partition proceeding without the written consent of the one entitled to the homestead. Such a contention ignores those cases wherein it has been held that a court of equity, under its general chancery powers, will not permit a partition proceeding to be used to circumvent and avoid the established principles of law and public policy, and will, in the exercise of its general equitable jurisdiction, control the proceeding so as to protect the rights of all parties concerned. (*Brod* v. *Brod,* 390 Ill. 312; *Murphy* v. *Murphy,* 343 Ill. 234.) In pursuit of the same equitable jurisdiction, a court of equity may enter a decree adjusting the respective rights of the parties to the cause and the party entitled to the homestead. (*Mix* v. *King,* 55 Ill. 434; *Brokaw* v. *Ogle,* 170 Ill. 115; *Hertz* v. *Buchmann,* 177 Ill. 553; *Powell* v. *Powell,* 247 Ill. 432.) In the latter type cases we have held that it is not equitable to allow the owner of the homestead estate to retain the whole of the property merely because it could not be divided, where great injustice would result to the owner or owners of the balance of the estate.

The leading case to promulgate this principle is *Wilson* v. *Illinois Trust and Savings Bank,* 166 Ill. 9. There, one who had a homestead, or right of occupancy, to the extent of $1000 in value in premises with a total value of $36,000, sought to retain possession and use of the entire property as against the owner of the balance of the estate. After commenting on the historic powers entertained by equity in partition because the operation of legal remedies was imperfect and incomplete, the court pointed out that although

the practice in partition is now prescribed by statute, the long-established jurisdiction of equity is nowise affected. In further reviewing the problem, the court said, on page 14: "In a sale under the Partition act appellant's homestead could not be sold with the rest of the property, without her consent in writing filed in the case. [Citing.] *But* [emphasis ours] equity has a concurrent jurisdiction, under which, in cases like the present, more complete relief may be afforded for the protection and enjoyment of different rights and interests than can be had under that act." In conclusion, the opinion states that if a court of equity were powerless to act to adjust the equities between the parties where the circumstances require it, then the court would fail of its purpose, and affirms a decree by which the trial court required the party owning the homestead interest to deliver up possession to the owner of the balance of the estate upon receiving payment of $1000. Other decisions in which this court has upheld decrees which compelled a party to accept $1000 in lieu of his homestead and to surrender possession to those entitled to the excess are *Cutler* v. *Cutler*, 188 Ill. 285; *Hotchkiss* v. *Brooks*, 93 Ill. 386, and *Mix* v. *King*, 55 Ill. 434.

A further indication that the written assent referred to in section 20 of the Partition Act is not always mandatory is found in the case of *Betz* v. *Farling*, 274 Ill. 107. There, a plaintiff, who owned an undivided interest in three tracts of land, filed a suit for partition naming as a defendant one who had a life estate in an undivided one-half of the three tracts. This defendant was defaulted and, upon the report of sale being filed, moved to vacate the order and decree of sale on the ground that she had not consented to the sale of her life estate in the manner provided by section 32 of the Partition Act. The trial court denied the motion and, in upholding its action, we said: (page 114) "That section evidently applies to a case where one has a life estate in the whole or some definite part of

the premises, so that there can be no unity of possession until the death of the life tenant. If otherwise interpreted, the section would enable any party having an undivided interest to prevent a sale by the grant of a life estate and deprive the owner of another undivided interest of all remedy." The situation is much the same in the present case, for to hold that one joint tenant who holds a right of occupancy valued at $1000 may so deprive the other joint tenant of all benefits of the land, would inequitably deprive the latter of all remedy provided by the balance of the Partition Act.

Appellant relies on *Richardson* v. *Trubey,* 250 Ill. 577, and *Gradler* v. *Johnson,* 372 Ill. 137, as supporting his position. An examination of those decisions discloses that in each case, the error which required reversal was not the failure of the owner of the homestead to give his written consent, but the omission of the court in not properly fixing the value of the homestead interest before the sale. While the court, in each case, commented on the written consent to sale, the necessity of consent in those cases was not at issue and was not determined. Indeed, in the *Richardson case,* the court recognizes and reaffirms the principle of *Wilson* v. *Illinois Trust and Savings Bank,* 166 Ill. 9, that courts of equity, in order to prevent injustices arising from the occupation of premises of much greater value by one who has an estate therein to the extent of only $1000, may require the surrender of possession by the one entitled to the homestead upon payment of $1000 to such owner. The holding of the *Richardson case* is simply that he cannot be compelled to accept less than $1000 without his consent. In the case before us, the decree provides for a first payment of $1000 to appellant out of the proceeds, in lieu of his homestead interest, thus, the issue in the cases relied upon is not present here.

The purpose of requiring assent to the sale of a homestead interest is to protect, not to enlarge, the homestead

estate. An examination of the cases shows that there is an unbending adherence to the requirement where it is necessary to protect the interest of a widow and children from the heirs or administrator of an estate and where it is necessary to protect the householder from the lienor who would deprive him of his entire estate. On the other hand, where the invocation of the requirement results only in an enlargement of the homestead right, particularly as against one with whom the householder holds as a tenant in common or joint tenant, the rigidity of the rule is relaxed under the equitable power of the courts to prevent injustice. Such a situation is presented in the instant case, where appellant's purpose in invoking the rule is to prevent his joint tenant, the appellee, from the use and benefit of her rightful interest in the land and to thus enlarge his own. The decree found the premises not susceptible of division, fixed the value of appellant's homestead and ordered it paid, and, under the circumstances, the court did not err in proceeding without appellant's written consent to the sale. The rights of both parties are recognized and protected without injustice to either.

We must now consider the cross appeal, which raises the issue of whether appellee, as a joint tenant with her husband, is entitled to one half of the homestead interest. She reasons that she had such a half interest during the period she lived on the premises with her husband and, that since she is living apart from her husband without fault, nothing has occurred to take away her interest and give it to her husband. The master made no reference to a homestead interest in his report but recommended only that the premises be sold and the proceeds divided equally between the parties. The court sustained an objection to the master's report in this regard and in its decree found that appellant was entitled to the entire homestead interest, for reason that appellee forfeited her right to homestead by leaving her husband without just cause.

It was pointed out in *Brod* v. *Brod,* 390 Ill. 312, that prior to the case of *Johnson* v. *Muntz,* 364 Ill. 482, language used in many decisions of this court seemed to indicate that where a husband and wife own land jointly and reside thereon, the estate of homestead is vested in them jointly. The *Johnson case,* however, after reviewing the previous decisions, held that where a husband and wife owned and occupied premises jointly, the homestead estate was vested in the husband as far as a judgment creditor of the husband was concerned, and that payment or tender of only $500 by the sheriff on the theory that he was entitled to only one-half of the homestead of $1000, would not validly extinguish the husband's homestead right. Following this, the case of *DeMartini* v. *DeMartini,* 385 Ill. 128, cited the *Johnson case* as holding that the homestead estate in a joint tenancy vested in the husband, alone, but the decision in the *DeMartini case* was that a wife, even though not the head of the family, could be a householder and have the homestead exemption where the husband had conveyed his homestead to her.

Following this came the *Brod case,* which, unlike any of the other cases cited, presented the problem of allocating homestead in a controversy between a husband and wife who owned their residence as joint tenants. In that decision, the court reiterated the finding of the older cases, (*Capek* v. *Kropik,* 129 Ill. 509, *Lininger* v. *Helpenstell,* 229 Ill. 369; *Stocker* v. *Curtis,* 264 Ill. 582, *Grote* v. *Grote,* 275 Ill. 206, and *Voss* v. *Rezgis,* 343 Ill. 451,) that a husband and wife owning and occupying land jointly are vested with the estate of homestead jointly, and concluded that the law and public policy as exemplified by the Homestead Exemption Act, the act relating to husband and wife and the act pertaining to conveyances, do not sustain the concept that the homestead exemption of $1000 should be divided equally between them when they are opposing parties in a partition proceeding, for to so divide the

proceeds would, in effect, be the same as selling the property without reference to homestead. Under the facts in the *Brod case,* it was held that the wife was entitled to the entire value of the $1000 in a suit instituted by her husband to partition their residence, which they owned and have occupied jointly, for the reason that the husband had left and abandoned the homestead, was living separate and apart from his wife through no fault of hers, and because the husband had offered no other suitable homestead for his wife.

In the case under consideration, appellant was occupying the homestead property when appellee filed her suit to partition, while appellee had moved out of the home and was residing with her mother. The facts show that appellee first left appellant on July 17, 1948, when she departed for a two-weeks' visit to Nebraska. Upon her return she went to her mother's home to live. After several discussions in which appellant was the moving party, it was mutually agreed between them that appellant would pay appellee $7500 and that she would return to the home as his wife. The money was given to appellee and she returned to the home but left again at the end of two weeks and has since resided with her mother. The exact cause of the quarrel between the parties is not clearly shown by the evidence, although there is some intimation that appellee was dissatisfied with the building in which they lived, and that appellant had pushed her on several occasions. Both intimations were satisfactorily explained by appellant, without contradiction, when he testified in his own behalf. Following the second separation, appellant visited appellee and says that he solicited her return to the home, but was unsuccessful since the visits usually degenerated into further arguments, with the result that appellee ceased to even talk of coming home. In February, 1949, she filed this action.

From the foregoing facts and circumstances, we believe the trial court was correct in finding that appellee left her

husband without cause and in effect abandoned the premises as a place of residence, thus divesting herself of her homestead interest by her own act. Under the decisions discussed, appellant, who remained the sole occupant of the premises, was entitled to the entire homestead interest, and the trial court properly set off to him the sum of $1000.

The remaining issue before us is the correctness of the court's action in refusing to order appellee to repay her husband the sum of $7500. Appellant alleges that he paid her the money in return for her promise to come back and live with him, and he now contends that appellee had no intention of returning but made the promise solely for the purpose of obtaining the money. The evidence shows that appellee worked for many years and that much of her earnings and savings were held jointly with the appellant. It is her position that the $7500 turned over to her was only a portion of what she had earned and that the agreement with appellant was that if they could still not "make a go of it" she was to keep the money as her sole property. The chancellor found that the $7500 was paid in full satisfaction of appellee's interest in all of the jointly owned personal property, and that the balance thereafter became the property of appellant. He denied appellee's prayer for an accounting on the ground that such a settlement had been made. We believe that such a decree is fairly supported by the evidence.

In addition, there is a more definite reason why appellant may not recover the money in this action. The sole consideration pleaded and shown by appellant's testimony was appellee's promise to return and live with him as his wife. A wife's agreement to discontinue a separation cannot constitute a sufficient consideration for an agreement upon the part of the husband to pay her for so doing, for in returning to and living with him she only performed the duties contemplated by their marriage. (26 Am. Jur., Husband and Wife, sec. 328.) The wife may not recover

under such a contract, nor may the husband, for the contract is void as against public policy. Where a contract is illegal or against public policy, a court of equity will not, at the suit of one of the parties who participates in the illegal or immoral intent, either compel the execution of the agreement or set it aside after it has been executed, because to give relief in such a case would injure and counteract public morals. When the parties are *in pari delicto* and the contract has been executed on the part of one of them by the conveyance of property or the payment of money, neither party can recover anything paid under the contract. (*Vock* v. *Vock,* 365 Ill. 432.) The return of the money paid in this case was properly refused by the trial court.

The decree of the circuit court of Whiteside County is affirmed.

*Decree affirmed.*