363 P.2d 779

Edith Chloe MATHIE, Plaintiff and
Appellant,

v.

William Truman MATHIE, Defendant and
Respondent.

No. 9345.

Supreme Court of Utah.

July 7, 1961.

Gustin, Richards & Mattsson, Salt Lake City, for appellant.

Joseph C. Fratto, Salt Lake City, for respondent.

CROCKETT, Justice.

The plaintiff, who was granted a decree of divorce, appeals attacking only the disposition of property made therein.

It is apparent that the trial court, being convinced that the parties had come to a necessary parting of the ways, and that grounds for divorce were established, proceeded to consider the various factors proper to take into account [1] and in the light thereof made such adjustment of their property rights as he thought would provide the best foundation for each to live separately. Having done so, it is our duty to give deference to his advantaged position and prerogatives, and not to disturb the decree unless it is shown clearly and persuasively to be so unfair and inequitable as to manifest an abuse of the wide discretion reposed in the trial court in such matters.[2]

This was a second marriage for both, each having been previously married and divorced. They were married February 28, 1946. The plaintiff had children by her prior marriage, who are themselves now married. The matrimonial barque has seen tempestuous seas, including a prior divorce action in 1953, which was dropped when a reconciliation was effected. It is fortunate that the adjustment of the property rights of these parties does not appear to work any great hardship on either. They are about the same age; plaintiff 52, defendant 53. Although the evidence is that both have somewhat impaired health because of heart ailments, they both show industrious work records and are employed, with incomes adequate for their own support. Plaintiff has been employed variously as a waitress, cook, teacher, and is employed by the State Liquor Control Commission at $260 per month. Defendant is also a former school teacher; and has had various

1. For a statement of the facts pertinent to consider, see Wilson v. Wilson, 5 Utah 2d 79, 296 P.2d 977, and authorities therein cited.

2. Lawlor v. Lawlor, 121 Utah 201, 240 P.2d 271.

other jobs and is now driving a truck for a dry cleaning firm earning approximately $60 a week.

No alimony or support money was asked or awarded. Each was allowed to keep items of personal property and their own accumulated bank accounts. Our only concern here is their rights in the real property known as 643 and 657 South 7th East in Salt Lake City. Upon it are two buildings: a home and a four-unit apartment. Prior to their separation the parties lived in one of the apartments and rented the other three unfurnished for $45.00 per month each; and the home was rented for $85.00 per month. The property was purchased by them in 1947, a year after their marriage, for $13,500. The plaintiff appears to have taken the initiative in this transaction, and it was she who furnished the $4,000 down payment; the defendant has independently contributed approximately $2,300. The property has been cared for and managed by their mutual efforts; the taxes, expenses and monthly payments have been paid from the rentals. The property is entirely paid for and the parties agreed to a present market value of $25,000.

In fixing the rights of the parties in this property, the trial court followed generally the pattern set by the parties themselves in the 1953 reconciliation agreement: that the property was to belong to the plaintiff, subject to the defendant's right to share in its use and to participate in the income realized therefrom during his lifetime, and in the event of the plaintiff's prior death, to give the defendant a life estate in the whole thereof, before it passed to the plaintiff's heirs.

The controversy giving rise to this appeal is the dispute between the parties as to the provisions of the decree attempting to carry out the general purpose above stated. As defendant's counsel put it "It is not ambiguous, it just needs a little clarification." This we essay to do in this opinion.

Without delineating the various provisions of the decree and the contentions with respect thereto, from our analysis of it and the record we conclude that the decree should fix the property rights of the parties as follows:

1. The fee title to the property is vested in the plaintiff, subject to certain rights of defendant in said property during his lifetime; and upon his death the property shall pass to the plaintiff, or to her assigns, heirs or devisees; provided, that should the plaintiff predecease the defendant, he shall have a life estate in the entire property.

2. The plaintiff shall have the possession and the right to live in the home, rent free; and the defendant shall have the right to live in one of the apartment units, chosen by him, rent free.

3. The plaintiff may, if she desires, rent the home, and after paying the expenses and upkeep thereon, keep whatever profit is realized from such rental.

4. If the plaintiff chooses not to live in the home, but to rent the same as provided in (3) above, she may live in one of the apartment units upon paying, or being charged with, the usual monthly rental for said apartment.

5. The taxes and heating expenses shall be probated on a ratio of $85.00 for the home to $180.00 for the apartment; and each party is to pay the proportion thereof represented by the unit that party occupies, the remainder to be paid from the rentals of the respective units.

6. Water, light and all other utilities and repairs shall be borne by each property separately.

7. The net profit realized from renting the three apartments, other than the one occupied by the defendant, shall be divided between the plaintiff and defendant equally.

8. The property may be sold by mutual consent of the parties. In that event the proceeds shall be divided as follows: the plaintiff shall have one-half of the net sales price plus $2,500; and the defendant shall have one-half of the·net sales price less $2,500.

Undoubtedly the trial court would better have served the desired purpose by making an adjustment of the rights and duties of the parties and a division of the property in some manner which would have permitted them to go their separate ways, rather than this attempted joint ownership arrangement. However, he not having done so, we are not disposed to substitute our judgment for his, except to make more clear and definite what the rights of the parties are as hereinabove set forth.

Considerable emphasis is placed upon the argument that the decree deprives plaintiff of rights which she obtained by contract with the defendant in the 1953 reconciliation agreement. Setting aside for the moment the question as to how inviolable a contract between spouses to fix their property rights inter se during coverture may be, and assuming that under proper circumstances they may make one which is binding upon them and which must be honored by a court in the event of a divorce, it nevertheless seems to me that our dissenting colleagues place altogether too much emphasis on certain aspects of the 1953 reconciliation agreement and fail to allow the trial court the latitude of discretion he should have in carrying out its purpose and fulfilling the court's proper function in a divorce action.

In view of the obligations inherent in the marriage relationship, the agreement is extremely spare in what it spells out as to the rights of the parties in this property. It did not expressly state who was to have its use and benefit during their further marriage; nor in the event of a future separa-

tion or divorce; nor in the event of a sale of the property. Particularly, there was no provision that the plaintiff was to have it exclusively for her use and benefit. If it was her purpose to so claim the entire property and the income from it for herself and to exclude the defendant therefrom during the future years of the marriage, as now seems to be her position, then the aggressiveness and avarice which the trial court appears to have sensed, and with which the writer is not in a position to disagree, is even more apparent than from other matters shown in the record, the most significant of which is the fact that a few days before this latest divorce action was filed, she attempted to convey this property to her daughter, in violation of her agreement to protect the defendant by seeing that he had a life estate in it.

The only fair assumption the court could indulge is that the parties intended to resume their marriage in good faith and to mutually enjoy the property during the future years of their marriage, presumably until "death do us part"; that the purpose of putting the title in the plaintiff's name was not to exclude the defendant from any use or enjoyment thereof during his lifetime, but was only to assure that it would descend to the plaintiff's daughters; and that the plaintiff's irrevocable will was executed to protect the defendant in the property for his lifetime in the event she predeceased him.

■ Inasmuch as the agreement did not contemplate a future divorce and did not articulate what was to be done in that eventuality, it was the responsibility of the trial court to so interpret and apply it as to achieve a just and equitable result in the light of all the circumstances. This it has done by providing that each shall have a share in the enjoyment of the property during their lifetimes. If ownership is continued the plaintiff is given substantially more than one-half of its benefits. In view of the possibility that such joint ownership and operation may not prove desirable the court wisely created a plan by which they can sell it if they so desire. The plaintiff would then get $15,000 or 60% of the proceeds; and the defendant would get $10,000 or 40% (based on the agreed value of $25,000). Therefore what is done by the trial court's decree, and carried out in the decision of this court, is not at substantial variance from the general purpose the parties themselves appear to have had in mind, or reasonably may be supposed to have had in mind if they had thought of the unplanned circumstances which arose. In the writer's view it is sufficiently consistent with that general purpose that it certainly cannot be regarded as so inequitable that this court would be justified in overturning it.

■ Reverting to the question of the sanctity of the contract, attention is directed to the fact that agreements between spouses

to fix their property rights inter se during coverture are generally not held to be so absolute as to prevent a court under its equity powers in divorce actions from doing that which justice and equity require for the interest and welfare of the parties involved. We say this notwithstanding the citation of a number of cases for the proposition that spouses may make a valid contract in consideration of dismissing a suit for divorce. See Annotation at 11 A.L.R. .277 et seq.

Some cases which contain language to the effect that agreements of that kind are valid state that they should be favored because they tend to encourage reconciliation and preservation of the family. But it is obvious that this is a two-edged sword. Other well-considered cases disavow such contracts, reasoning that the rights and duties in the marriage relationship are fixed by law and that the parties should not be encouraged to abrogate or avoid them by using family strife to bargain themselves into positions of advantage; that doing so bears the seeds of further strife; whereas there should be a forgetting and forgiveness of past difficulties and a fresh re-establishment of the obligations and duties of the marriage as originally intended.

It should further be kept in mind that the record here does not indicate that any valid ground for divorce existed in 1953, un-less it be so assumed solely from the fact that the plaintiff filed the divorce action and that the defendant made the agreement referred to in order to get her to reconcile with him. It is noteworthy that in scrutinizing the validity of such agreements courts are sometimes concerned with whether there was a valid ground for divorce which the promisee forgave upon the reconciliation. In the case of Yost v. Yost [3] the Nebraska court stated that if a wife abandons her husband without just cause, it is her duty to return voluntarily. Her husband's promissory note executed to induce her to return was held to be without consideration and not enforceable. While we would not press that point unduly, believing that in the absence of bad faith, if an action were dismissed at the request of the other spouse, that might form a consideration for an otherwise valid promise. Nevertheless under some circumstances, the justification, or lack thereof, for the prior separation might well be given some thought by the court in determining whether it would be equitable to enforce such an agreement between spouses for rights they would not otherwise possess in the marriage compact.

Another case bearing on the question of the enforceability of such contracts is Wiegand v. Wiegand [4] where there had been a separation, the wife agreed to come back to her husband upon his promise to pay $7,500. Reasoning along the lines

3. 124 Neb. 608, 247 N.W. 583.

4. 410 Ill. 533, 103 N.E.2d 137.

delineated above the court held the agreement void as against public policy.

A generally similar view of such a contract is revealed in Cronin v. Hebditch.[5] It involves a somewhat different fact situation than our case. There a wealthy husband of advanced years, who had an estate of about $700,000, made an agreement with his 19-year-old wife that in consideration of $9,000 to be paid her, $1,000 down and the balance in 10 yearly installments, she would release him and "his heirs, personal representatives and assigns, of all rights and claims by inheritance or descent * * * incident to said marriage relation." He died before a divorce. The agreement was interposed as a defense to the wife's claim against his estate. The court struck it down as invalid. In its discussion it appears to place the ruling upon two grounds: that it contemplated the granting of a divorce and was therefore void as against public policy; and it also placed emphasis upon the youth and inexperience of the wife, stating that entering into the contract with her was an unjust and inequitable attempt to deprive her of her marital rights.

A case more closely analogous to the instant one and where the principles applied by the court are applicable here is that of Campbell v. Prater.[6] During a separation the wife had agreed to return to her husband upon his promise to relinquish his statutory right to one-half of the wife's estate upon her death. She had also paid him $100 in consideration for his promise. Her contention that the resumption of the marriage was a "brand new deal" and that the contract was therefore binding on them was rejected. The court remarked the inadvisability of permitting the wife to assume the dominant position and dictate terms to her husband growing out of her willingness to leave him and his desire to induce her to return. (Similarity to the instant case is indicated.) It pointed out that the contract of marriage involves rights and obligations growing out of generations of experience and recognized by law which should not be changed by the "will or whim" of the parties. Accordingly, it held the agreement invalid and unenforceable.

From our examination of the authorities it appears that the true import of the well-considered cases dealing with this subject is that such agreements will be analyzed upon their own facts and are enforced by the courts only if they are fair and equitable and do not run afoul of any consideration of public policy.[7]

The foregoing discussion is purposed to show the limitations upon such agreements

---

5. 195 Md. 607, 74 A.2d 50.
6. 64 Wyo. 293, 191 P.2d 160.

7. That agreements between spouses in regard to marital obligations are advisory but are not absolutely binding on the court see Callister v. Callister, 1 Utah 2d 34, 261 P.2d 944.

and to emphasize the careful scrutiny they ought to be given before a court of equity should give them effect. However, we are not disposed to disagree with the proposition that where neither spouse is in a position of undue disadvantage and they voluntarily enter into a contract which affects their rights only, it should be regarded as presumptively valid and the court should give it effect unless there are persuasive reasons for doing otherwise. But the real question is not so much whether the contract can properly be regarded as valid, as it is what the court, under its acknowledged broad equitable powers in divorce cases, will do in regard to the property and property rights of the parties, a part of which are the rights in such a contract.

■ The marriage itself and the obligations inherent in it are matters which it has always been recognized cannot be left entirely to private contract. This applies also to the property rights of the parties because their welfare, and to some degree the public welfare, is involved. That is one of the reasons that public sanction, through the court, must be obtained for what is done.

■ The parties cannot by contract completely defeat the authority expressly conferred upon the court by our statute, Sec. 30–3–5, U.C.A.1953, in cases of divorce, to "make such orders in relation to * * * property * * * as may be equitable."

Under it there can be no doubt of the court's prerogative to make whatever disposition of the property, including the rights in such a contract, as it deems fair, equitable and necessary for the protection and welfare of the parties. There is no basis for concluding that the decree entered in the instant case is so manifestly inequitable or unjust that we should upset it.

It may be wishful to expect that this decision would please the parties or counsel advocating their interests; and perhaps more so to assume that it so clearly fixes their rights that they can find nothing further to quarrel about, if they are disposed to do so. On the other hand, if accepted with a reasonable degree of forbearance for the rights of each other, we believe it can fulfill the objective the trial court appears to have had in mind: to provide a basis for the parties to live separately and each participate equitably in the use, enjoyment and the income that may be made from their property.

It is ordered that the decree be modified in accordance with this opinion; and as so modified it is affirmed. Each party to bear his own costs.

WADE, C. J., and McDONOUGH, J., concur.

CALLISTER, Justice (dissenting).

I dissent. The decree of the lower court, insofar as it awarded defendant rights in

the real property involved, is inequitable and not supported by the record.

Both the trial judge and the majority of this court, while recognizing its existence and validity, have failed to give the reconciliation agreement of December 5, 1953, its proper consideration. Under this agreement the defendant conveyed to plaintiff all of his interest in the real property. Plaintiff agreed not to change or alter, during the defendant's lifetime, her will which she had executed. The will provided that, upon plaintiff's death, the real property would go to her two daughters subject to a life estate in the defendant. The defendant, in consideration for his wife's forgiveness and the dismissal of the divorce complaint, was willing that she become the sole owner of the real property.

Such agreements are valid and enforceable[1] and, like property settlement agreements between spouses,[2] should be upheld in divorce proceedings if they are fair and free from fraud. However, both the decree of the lower court and the decree formulated by the majority of this court almost completely nullify the terms and plain intent of the reconciliation agreement.

Both decrees award the defendant a share of the rents received from the property and a share of the proceeds if the property is sold. There is nothing in the agreement to support such an award and nothing in the record to justify it. By awarding defendant a greater interest in the property than he had under the agreement, he is being rewarded for conduct justifying plaintiff a divorce and penalizing her. It is an injustice to compel this plaintiff to surrender to the defendant that which he had freely given as an inducement for her return to him.[3]

Nor can the decrees be supported by the record. The plaintiff made the down payment of $4,000 to purchase the property. All subsequent payments, except the last payment of $700 made by her daughter, have been made by the plaintiff from income received from the property and her own funds. She likewise has paid for all utilities and maintenance expenses. True, the record substantiates defendant's claim that he contributed repair and remodeling to the property in a value of approximately $2,300.00. However, this was done *prior* to the agreement of December 5, 1953!

Throughout most of their married life, plaintiff has been employed and supported herself. This is true for the entire time since 1953. What circumstances as shown in the record can possibly justify awarding the defendant a greater interest in the real property than he had under the reconciliation agreement? Under the decrees he is

---

1. Rest. of Contracts, Sec. 585; 17 Am. Jur. p. 268, Rodgers v. Rodgers, 229 N.Y. 255, 128 N.E. 117, 11 A.L.R. 277.
2. 27A C.J.S. Divorce § 234, p. 1064.
3. See: Levine v. Levine, 204 Ga. 313, 49 S.E.2d 814, 4 A.L.R.2d 1205.

awarded the automobile and all of his personal property, including his savings. It must be concluded that the award is inequitable and that the trial judge abused his discretion.

Comment should be made upon another aspect of the case. Shortly prior to the commencement of this action, plaintiff's daughter paid the balance of $700 due under the contract of purchase. Then the plaintiff, about one or two days before filing her complaint, deeded the property to her daughter. The trial judge took a rather dim view of this transaction and considered it a concealment of assets which should be available for distribution. He declared the deed to the daughter a nullity and ordered the plaintiff to secure a reconveyance. Whether or not this was a concealment of an asset which could properly be distributed, it is doubtful that the lower court's determination and order was proper in the absence of the daughter as a party to the proceeding.

The decision of the lower court should be reversed.

HENRIOD, Justice (concurring with the dissent of CALLISTER, J.)

I subscribe to the observations and conclusions of Mr. Justice CALLISTER in his dissent, and add that in my opinion the trial court has made a will for the parties without the benefit of provisions of the Statute of Wills, and that the majority opinion has compounded the error by adding a codicil thereto subject to the same objections, endeavoring to change the terms of the trial court's conclusions without benefit of evidence adduced that might have been subjected to the test of cross-examination.