**Marion Williams PEAVY, Appellant,**

v.

**Frances Clair Hudson PEAVY et al.,
Appellees.**

Court of Appeals of Kentucky.

Dec. 1, 1961.

Marion Williams Peavy, pro se, Gess, Mattingly, Saunier & Atchison, Charles L. Calk, Lexington, for appellant.

Elwood Rosenbaum, Virgil Fowler, Lexington, for appellees.

MOREMEN, Judge.

The Fayette Circuit Court granted to appellee, Frances Peavy, an absolute divorce from appellant, Marion Peavy, lump sum alimony of $10,000, custody of their two children who, at the time, were eleven and twelve years of age, maintenance for them in the sum of $120 per month and costs, including an attorney's fee of $1,200.

Appellant contends that the awards of money were excessive. In addition he complains because the judgment did not specifically include a provision allowing appellant reasonable rights of visitation with the children.

The record discloses that during a short span of time appellant demonstrated that he was a man of considerable business acumen and that in the immediate years preceding the collapse of this marriage the family lived well, in a good neighborhood, and on a scale higher than most. They usually rode in new expensive cars. When the divorce suit was instituted the family had a Cadillac, a Dodge and a Ford. Ever since the children were old enough to ride, they had horses and ponies.

Appellant concedes in his brief that at the time the divorce action was filed, on July 8, 1958, he was a relatively successful real estate agent and dealer. He was engaged also in several side line activities, but the record is not clear as to whether they were profitable.

Appellant's brief advances the theory that the divorce proceeding so hampered his activities that he is now reduced to working in the capacity of photographic assistant at a wage rate of $50 per week. He blames the fact that simultaneously with the institution of the suit a general restraining order and general orders of attachment were obtained and the latter at various times thereafter were served upon six banking institutions in Lexington, one in Williamsburg, one in Nicholasville, and one in Chattanooga, Tennessee. In addition it is stated that a general order of attachment was issued and served upon all tenants who resided on various pieces of real estate he owned and that they too were summoned to answer garnishees. These actions, it is said, caused a general stampede of all his creditors to protect their various interests. In any event, appellant instituted proceedings under Chapter 11 of the Bankruptcy Act (11 U.S. C.A. § 701 et seq.) in the District Court of the United States for the Eastern District of Kentucky and so far as this record shows they are still pending. Under the terms of the Act, appellant was subsequently appointed debtor in possession and granted authority to manage his own estate. From that time on the various actions against him were stayed.

An important item for consideration in this law suit, however, was presented by the fact that when appellant petitioned the District Court it was necessary for him to list, under oath, schedules of his assets and he placed the valuation of his assets at $89,-852.53. His debts were $59,852.53.

It must be stated before we enter into a discussion of the above schedules, that at

the time of the divorce suit appellant owned several vehicles other than the three automobiles listed above, but by the time he filed the schedule of personal property he had only a Ford and a Dodge automobile. After the divorce suit was filed he sold the Cadillac to his brother in Georgia for the sum of $3,100 for which he states he received a credit of $1,100 on an amount that he owed him and paid a $2,000 mortgage which the bank held against the car. In addition, on the day after the divorce suit was filed he went to the Williamsburg bank before the attachment arrived and withdrew his deposit of $4,633.98.

When we return to the bankruptcy proceeding (this record offers only a bare sketch of what has taken place there) we find that later in the proceeding two appraisers were appointed and their report shows that appellant's liability exceeded his assets by about $11,000. It is argued that appraisal is the better estimate of the true value of the property, and the chancellor should have based the awards on it.

Appellant's estate was of a mixed nature and is difficult to evaluate. He owned about ten pieces of real estate, securities, automobiles, notes which were secured by second mortgages on various pieces of real estate, real estate commissions owed to him, and other items of personal property. Such property is never easy to appraise and in this case the evidence in no instance has reached a high definitive quality. The circuit court pointed out in his finding of fact that "it is manifest that no true evaluation can be made of the defendant's interest or equity in the property without a sale of the property, and in the absence of such a disposal the court is left to conjecture and speculate as to the true worth of the defendant's estate."

It is not unusual that evaluation of property in divorce has some speculative aspects. The chancellor is forced to base his decision upon the evidence which is presented to him and, in cases of this type, it is seldom complete and certain. The high emotional disturbance of the parties at the time does not stimulate a desire to be fair or just about any phase of the controversy and this does not aid the court in obtaining the full facts. Awards of alimony or maintenance do not result from the exercise of exact rules of science or art—all are tinctured with guesswork—and most clearly is this so when the chancellor is concerned with fixing value.

Value is a word of many meanings and its determination often depends upon the viewpoint and background of the person who is concerned with it. An object may be of value to one person and useless to another. In law we have no absolute rule for fixing all values, although there has been an attempt to establish plain rules for some types of cases. Nevertheless they are not uniform. We recognize that when highly personal objects are being appraised the value to the owner may be the true value; sometimes in other valuations, the fair market value is the test. In public utility rate cases sometimes the rule of "reproduction costs" is applied. Again an attempt is made to establish the "invested" value and grant a fair return on that. In all type cases we have found that competent expert appraisers have widely diverse views as to the value of property—particularly in condemnation cases—where witnesses introduced by opposing parties rarely, if ever, reach an accord.

Although the chancellor did not state that he was using the valuation supplied by appellant in the bankruptcy proceeding, he granted lump sum alimony in an amount which would be equal to about one-third the net value of the estate listed. In addition, as pointed out above, at the time the divorce suit was filed appellant had other personal property and money which did not appear on the bankruptcy schedules. So, in fact, the chancellor did not award even the amount usually reached by the application of the one-third rule.

In Petrie v. Petrie, Ky., 262 S.W.2d 182; and Yonts v. Yonts, Ky., 329 S.W.2d 209, we stated that an award of alimony is

within the sound discretion of the circuit court and will not be disturbed unless the award appears to be clearly erroneous. We believe the awards of alimony and maintenance were fair ones and should not be disturbed. An examination of the record has convinced us that the award of $1,200 for the attorney's fee was minimal.

 In connection with the appellant's contention that the judgment did not provide for visitation rights, we find that it was not shown that he had ever been denied that right. However the trial court retains jurisdiction of this matter and if there has been any abuse of appellant's right, it may be corrected upon proper motion.

The judgment is affirmed.