**Orvill CLARK, Appellant,**

v.

**Gay Berry CLARK et al., Appellees.**

Court of Appeals of Kentucky.

March 1, 1968.

G. D. Milliken, Jr., Milliken & Milliken, Bowling Green, for appellant.

Douglas Keen, Titus G. Lyle, Keen & Lyle, James S. Secrest, Scottsville, for appellees.

CLAY, Commissioner.

Both husband and wife appeal from a divorce judgment on several grounds. It is necessary to recite the developments in this somewhat unusual case.

The parties had lived together for almost 20 years until shortly before the husband

filed suit for divorce. The wife subsequently filed such a suit and the two were consolidated. After substantial proof was taken, the husband proposed, and the parties entered into, a written "Reconciliation Contract". It provided the parties would attempt to effect a reconciliation and in the event this failed: they "shall be divorced"; the wife shall have the custody of the three infant children; the husband shall pay $75 a month per child for their support; and the husband shall pay the wife the sum of $50,000 in full and final settlement of all property and alimony rights.

The husband moved back into the home and stayed there a month. The reconciliation failed and the husband applied to the court for enforcement of the agreement. Eventually the Chancellor granted an absolute divorce to each of the parties, and set aside the agreement on the ground the husband had not entered into it in good faith. He awarded the wife lump sum alimony in the amount of $60,000, and decreed that the wife and children should have the right to the use and occupancy of the parties' residence for two years. The decree also allowed the same support payments as had been provided in the agreement, and directed that each party pay his own attorneys' fees.

The husband contends the reconciliation agreement should have been upheld and enforced. It is the wife's contention, and was so found by the court, that the husband did not enter into it in "good faith". The parties tried this issue as if the question was whether the husband actually made a good faith attempt at reconciliation. The trouble with this approach is that no one is seeking to enforce reconciliation, and the only enforceable terms of the agreement contemplated failure of reconciliation, regardless of the reason. There is respectable authority for the proposition that a reconciliation agreement on conditions is void as contrary to public policy. See Miller v. Miller, 78 Iowa 177, 35 N.W. 464, 42 N.W. 641; Mathie v. Mathie, 12 Utah

2d 116, 363 P.2d 779; McKay v. McKay, Tex.Civ.App., 189 S.W. 520. There is authority to the contrary. Restatement, Contracts, section 585; Hoyt v. Hoyt, 213 Tenn. 117, 372 S.W.2d 300.

Without deciding whether such an agreement ipso facto violates the public policy of this state, there are other reasons why the one before us is contrary to public policy or should not be enforced. The agreement itself, which provides, "(a) The parties shall be divorced", convinces us that it was made to facilitate the obtention of a divorce. Such a contract is contrary to public policy. 24 Am.Jur.2d, Divorce and Separation, section 889. Even if it was not such a contract, it is in the same category as a property settlement in contemplation of a possible future separation, which is contrary to public policy. See Hartley v. Hartley, 305 Ky. 350, 203 S.W.2d 770.

Assuming the agreement did not violate public policy principles, it is of such a nature as to require careful scrutiny in a court of equity. Since the parties planned to live together (rather than separate), the close confidential marital relationship continued between them and equity will not countenance overreaching by either party. It may be pointed out that even if a contract of this nature is fair when made, it may not be fair as between the parties when, at some future date, a divorce becomes effective.

Considering the nature of this agreement, the situation of the parties, and the subsequent developments, the Chancellor properly held it was not binding on the wife. He could have done so on public policy grounds. His finding of a lack of "good faith" on the part of the husband also could be justified as relating to the contract as a whole. It is apparent the husband was seeking to arrange in advance the terms of a divorce decree with respect to alimony and maintenance, and the terms were greatly to his advantage.

We do not mean to intimate that all separation or property settlement or reconciliation agreements are unenforceable, but are of the opinion that under the particular circumstances of this case the Chancellor properly refused to enforce the terms of the agreement.

The husband contends that, disregarding the agreement, the alimony allowance was excessive. We will discuss this question in considering the cross-appeal of the wife.

When the parties were married in 1948 the husband's net worth was approximately $4,000 or $5,000. The following year he went into the sawmill business and was quite successful. At the time the divorce suit was filed he was building a $100,000 home and had a gross estate of almost $400,000.

Throughout their marriage the wife worked closely with her husband in the conduct of the sawmill business. She performed manual labor and did all the bookkeeping, and there is substantial evidence that her participation in the business contributed very much to its success. The Chancellor found that she "substantially contributed" to the accumulation of her husband's estate.

In Heustis v. Heustis, Ky., 346 S.W. 2d 778, we decided that with certain qualifications, in the absence of unusual circumstances, and when the wife did not have sufficient estate of her own, it was equitable to allow her a minimum of one-third of the estate accumulated from the income of the husband during the marriage. See also Porter v. Porter, Ky., 394 S.W.2d 456, and Hunt v. Hunt, Ky., 394 S.W.2d 743. This is not an immutable rule but is a practical and proper basis for consideration of the difficult and delicate question of alimony. In Broida v. Broida, Ky., 388 S.W.2d 617, we observed that as the size of the husband's estate increases it is less important that such an award conform precisely to a formula. An equitable allowance out of the husband's estate is specifically authorized by KRS 403.060(1).

In the present case the wife had no property of her own nor was she charged with moral delinquency. Not only had she fulfilled her duties and responsibilities as a housewife for many years but she had also contributed a great deal to the husband's accumulation of his wealth. In view of the Chancellor's findings and in the absence of special considerations which would render such a division inequitable, it is our opinion that an award of one-third of the husband's net estate should have been decreed. The husband contends the wife was at fault, but this is not a controlling factor. Coleman v. Coleman, Ky., 269 S.W.2d 730; Patterson v. Patterson, Ky., 323 S.W.2d 862; Hunt v. Hunt, Ky., 394 S.W.2d 743. In fact the nature of the decree indicates that both parties were at fault, so that factor may not be invoked by one against the other.

On the basis of the Chancellor's finding that the husband's net estate was $300,000, we are directing an allowance of $100,000 lump sum alimony. The Chancellor will determine whether this allowance will be paid in cash and/or property, and will make provision for the manner in which this obligation shall be liquidated, by installments or otherwise, with necessary security being given the wife. Attention is directed to Broida v. Broida, Ky., 388 S.W.2d 617, with respect to proper provisions which may be included in the judgment.

The wife contends the support allowance for the children is inadequate, but we find no basis for disturbing this award. Likewise, we find no sound reason to disturb that part of the judgment which allowed the wife and children the use and occupancy of the residence for a period of two years.

The wife complains of that part of the judgment which requires her to pay her attorney fee. Under KRS 453.120 the husband is required to pay the wife's attorney fee if she has not ample estate

of her own. We held in Patterson v. Patterson, Ky., 323 S.W.2d 862, that her estate does not include the amounts which will be paid in the future under the judgment. The husband should be directed to pay a reasonable fee to her attorney. Denham v. Denham, Ky., 285 S.W.2d 176.

The judgment is affirmed in part and reversed in part, with directions to enter an amended judgment consistent with this opinion.

OSBORNE, J., dissents.

WILLIAMS, C. J., and HILL, MILLIKEN, MONTGOMERY, PALMORE and STEINFELD, JJ., concur.

OSBORNE, Judge (dissenting).

In Long v. Long, Ky., 416 S.W.2d 353, this court held:

"We have many times held alimony and the method of its payment are matters within the sound discretion of the trial judge and if this discretion is not abused the award must be upheld. The rule was most recently set out in Ballard v. Ballard, Ky., 411 S.W.2d 330 as follows:

" 'The amount of alimony to be awarded and the method of payment are matters within the discretion of the Chancellor. Hicks v. Hicks, Ky., 290 S.W.2d 483; Boggs v. Boggs, Ky., 330 S.W.2d 118; Ralston v. Ralston, Ky., 396 S.W.2d 775. The exercise of such discretion will not be set aside unless it is shown to be clearly erroneous. Somerville v. Somerville, Ky., 339 S.W.2d 940; Peavy v. Peavy, Ky., 351 S.W.2d 869. An abuse of discretion has not been shown.' "

This is the long-established rule in this jurisdiction. The facts here do not clearly show that the Chancellor abused his discretion. The court should decide on that basis alone and not on any arbitrary court-made rule, one-third or otherwise.

Therefore, I respectfully dissent.